IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Carolyn Bender, | C/A No. 3:24-cv-4344-JFA |
| Plaintiff, | |
| vs. | **ORDER** |
| Epting Distributors, Inc., Abigail Padilla in her individual capacity, and Jim Blevins in his individual capacity, | |
| Defendants. | |

I.  **INTRODUCTION**

Carolyn Bender (Plaintiff) filed this action in the Court of Common Pleas for Lexington County, alleging federal and state law claims against her former employer and coworkers. (ECF No. 1-1). On August 8, 2024, Defendants removed this case to federal court pursuant to 28 U.S.C. § 1331, § 1441, and § 1446. (ECF No. 1). Concurrently, Defendants filed a Motion to Dismiss the following claims: (1) Race harassment under 42 U.S.C. § 1981; (2) negligent supervision; (3) breach of contract; (4) breach of contract with fraudulent intent; and (5) civil conspiracy.[1] (ECF No. 5). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings.

---

[1] Defendants did not move to dismiss Plaintiff's race discrimination/disparate treatment claim brought pursuant to 42 U.S.C § 1981 against Defendant Epting.

On September 23, 2024, the Magistrate Judge issued a Report and Recommendation (Report), recommending that this Court grant Defendants' motion for failure to state a claim upon which relief can be granted. (ECF No. 14). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without recitation. On October 4, 2024, Plaintiff filed objections to the Report (ECF No. 16), to which Defendants filed a Reply. (ECF No. 17). Therefore, this matter is Ripe for review.

## II.    LEGAL STANDARD

The Court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM*

*Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47). The legal standard employed in a motion to dismiss under 12(b)(6) is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

### III.   DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report. However, a brief recitation of the factual background is necessary to analyze the objections.

Plaintiff's claims relate to workplace misconduct motivated by alleged racial animus. In May of 2022, Defendant Epting Distributors Inc. (Epting) hired Plaintiff, an African American female, as an accounts payable specialist. (ECF No. 1-1, ¶ 7). Epting designated Defendant Abigail Padilla (Padilla) as Plaintiff's supervisor. *Id.* ¶ 10. However, Plaintiff reported directly to Epting's Controller, Susan Walters, and an assigned mentor/trainer, Alice Griffin (Griffin). *Id.* ¶¶ 11–12.

Plaintiff alleges her relationship with Griffin soured immediately. *Id.* ¶ 13. Griffin, an African American female, allegedly addressed Plaintiff in a "harsh, short, and rude" tone and displayed "threatening and confrontational" behavior, including displaying an angry countenance, using inappropriate language, tossing paperwork in Plaintiff's direction, and snatching paperwork from Plaintiff's hands. *Id.* ¶ 13. Plaintiff alleges Griffin exhibited annoyance at Plaintiff's work-related questions and often ignored phone calls Plaintiff transferred to Griffin. *Id.* ¶¶ 13, 14. Additionally, after Plaintiff completed assigned tasks, Griffin allegedly delayed assigning new work, leaving Plaintiff idle for extended periods of time. *Id.* ¶ 15.

Troubled by Griffin's conduct, Plaintiff issued several complaints to Padilla and Walters. *Id.* ¶ 16. However, Padilla and Walters allegedly ignored Plaintiff's complaints, instructing Plaintiff to avoid Griffin and issue future work-related questions to Walters. (ECF No. 1-1, ¶¶ 16, 17, 20, 24). Dissatisfied with the arrangement, Plaintiff alleges she issued several subsequent complaints that also went unaddressed. *Id.* ¶ 25. Plaintiff alleges Defendant Jim Blevins (Blevins) and Padilla's inaction violated Epting's anti-

discrimination/harassment policies, namely the (1) Standard of Conduct; (2) Open Door/Conflict Resolution Process; and (3) Training Program. *Id.* ¶ 75.

Thereafter, Plaintiff filed an official complaint with Epting's human resources department. *Id.* ¶ 26 However, Plaintiff's grievance only exacerbated Griffin's misconduct, culminating in Griffin's verbal and physical assault of Plaintiff in Epting's parking lot. *Id.* ¶¶ 19–20. In consequence of the attack, Epting terminated Griffin's employment.[2] *Id.* ¶ 31.

Despite Griffin's termination, Plaintiff alleges the workplace misconduct persisted. *Id.* ¶¶ 40, 44, 45. Specifically, Plaintiff asserts that two of her Caucasian coworkers, Padilla and Blevins, exhibited a similar pattern of misconduct by assigning Plaintiff unattainable goals, expressing annoyance at Plaintiff's work-related questions, and overly scrutinizing Plaintiff's work product. *Id.* ¶¶ 41–42, 44. According to Plaintiff, Padilla and Blevins mistreated Plaintiff in furtherance of a conspiracy to prompt her resignation or termination. *Id.* ¶ 46.

After reviewing Plaintiff's allegations, Defendants' Motion, and the related briefs, the Magistrate Judge concluded that the Court should dismiss the following claims: (1) Race harassment under 42 U.S.C. § 1981; (2) negligent supervision; (3) breach of contract;

---

[2] Plaintiff alleges that prior to Griffin's termination Padilla and Jim Blevins (Blevins) interviewed Pattie Cox (Cox), a Caucasian female, to replace Plaintiff in the accounts payable department. (ECF No. 1-1, ¶¶ 32–33). However, after Griffin assaulted Plaintiff, Epting hired Cox as Griffin's replacement. *Id.* ¶ 37. Plaintiff alleges Epting favored white employees like Cox, offering higher wages and lenient remote-work opportunities. *Id.* ¶¶ 47–53. Defendants do not move to dismiss Plaintiff's disparate treatment claim. Therefore, the allegations concerning Cox are not address in this Order.

(4) breach of contract with fraudulent intent; and (5) civil conspiracy. In response, Plaintiff filed four objections to the Report, which are addressed in turn below.

1. <u>Section 1981 Hostile Work Environment Claim</u>

The Magistrate Judge recommends dismissing Plaintiff's hostile work environment claim because Plaintiff's allegations, accepted as true, fail to support the cause of action. (ECF No. 14, pg. 7–10). To establish a hostile work environment claim, a plaintiff must show: (1) she experienced unwelcome harassment; (2) based on her race; (3) which was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere; and (4) which is imputable to the employer. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207-08 (4th Cir. 2019) (Title VII); *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (Title VII); *see also Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020), as amended (Oct. 16, 2020) (applying the Title VII test to a § 1981 hostile work environment claim).

Plaintiff objects to the Report, arguing she pled facts sufficient to support each element as follows:

> Plaintiff alleges she is a member of a protected class based on her race, which is African American, that she 'performed her job in an exemplary manner at all times,' and that Defendant, through its agents, 'initiated discriminatory practices against the Plaintiff based upon her race' which 'subjected her to disparate treatment, race-based harassment.' Also, Plaintiff's similarly situated Caucasian colleagues were not subjected to such treatment.

(ECF No. 16, pg. 5). More specifically, Plaintiff contends Padilla and Blevins exercised race-based harassment by (1) leaving Plaintiff without guidance to complete tasks; (2) scolding Plaintiff when her work product failed to meet expectations; (3) subjecting

Plaintiff to ethics calls and daily harassment; and (4) retaliating against Plaintiff when she complained of the work conditions. (ECF No. 16, pgs. 5–7). According to Plaintiff, her similarly situated Caucasian coworkers did not endure similar treatment while enjoying higher wages and lenient remote work opportunities. (ECF No. 1-1. ¶ 61).

Although Plaintiff alleges Defendants exercised "racially hostile practices" (ECF No. 1-1, ¶¶ 58, 61), Plaintiff's allegations of race-based harassment are conclusory and lack factual support. In fact, the cited examples of race-based harassment appear to be race-neutral, and the Complaint otherwise lacks any factual support indicating Defendants acted with racial animus.

To the extent Plaintiff argues Defendants' conduct constitutes race-based harassment because her white counterparts did not endure similar treatment, the undersigned is unconvinced. Although courts "may infer that harassment is based on race when the plaintiff suffered harassment more often than others of different races," Plaintiff "cannot rely on her own 'conjecture' to impute a racial character to what appears to be neutral harassment." *McIver v. Bridgestone Ams, Inc.*, 42 F.4th 398, 409 (4th Cir. 2022). Notably, here, Plaintiff does not allege that Defendants made any racially derogatory comments, or that the alleged misconduct occurred proximate to any reference of race. *See Hansley v. DeJoy*, No. 7:20-CV-252-FL, 2023 WL 2541701, at *5 (E.D.N.C Mar. 16, 2023) (finding no inference of race-based harassment when "there are no alleged racially derogatory comments, and no references to race or prior protected activity, by the alleged harasser in any of the incidents described in the complaint") (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) ("the sort of workplace behaviors that Title

VII serves to root out [are] repeated invectives of an overtly racial tenor."); *see also Bailey v. Md. Dep't of Hum. Res.*, No. 1:21-cv-01629, 2024 WL 1012876, at *4 (D. Md. Mar. 8, 2024) (finding an allegation of race-based harassment conclusory when an unwelcome comment regarding Plaintiff's hairstyle failed to indicate racial animus); *compare with Clark v. Sampson Reg'l Med. Ctr., Inc.*, 706 F.Supp.3d 543, 552 (E.D.N.C 2023) (finding Plaintiff's allegation of race-based harassment factually sufficient to overcome the defendants motion to dismiss when the alleged harassment occurred immediately following Plaintiffs complaint about race and "the impropriety of staging a work event at a plantation").

Moreover, even if Plaintiff could provide facts indicating Defendants acted with racial animus, the alleged misconduct is neither severe nor pervasive enough to establish a hostile environment claim. As the Magistrate Judge noted, the Fourth Circuit has addressed situations factually similar to Plaintiff's:

> Buchhagen alleges that Dr. Beebe, her supervisor, created a hostile environment over the course of nine months by, inter alia, "mockingly" yelling at Buchhagen in one meeting, J.A. 22; yelling and pounding her hands on her desk during another meeting; "repeatedly harp[ing]" on a mistake made by Buchhagen in October 2009, J.A. 22; making "snide comments" to Buchhagen, J.A. 28; playing favorites with employees and pitting employees against each other; and unfairly scrutinizing and criticizing Buchhagen's use of leave and compliance with Beebe's directives. Many of these allegations are conclusory and lack sufficient factual support to make them plausible. In any event, the conduct alleged falls far short of being severe or pervasive enough to establish an abusive environment, and the district court therefore properly dismissed Buchhagen's hostile environment.

*Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219–20 (4th Cir. 2013) (emphasis added); *see also Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276, 281 (4th Cir. 2000) (dismissing

claim of hostile work environment where plaintiff showed "nothing more than a routine difference of opinion and personality conflict with her supervisor," and where plaintiff alleged, in part, "she received inadequate coaching, had to do work over and over, was unreasonably required to work late the night of an office Christmas party, and did not have access to the same work opportunities as other managers."); *EEO v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) ("Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard."). Like in *Buchhagen*, Plaintiff's allegations of unjustified criticism, lack of support, perceived retaliation, and general unfriendliness fall short of the severe and pervasive requirement to establish a hostile work environment claim.

Therefore, for the foregoing reasons, Plaintiff's objection is overruled, and the Court adopts the Report's recommendation to dismiss Plaintiff's hostile work environment claim.

2. <u>Negligent Supervision</u>

The Report recommends that this Court dismiss Plaintiff's negligent supervision claim because the South Carolina Workers' Compensation Act (SCWCA) provides the exclusive remedy for the cause of action. (ECF No. 14, pg. 10). Plaintiff objects to the Report, stating, "Plaintiff, in her well-pled Complaint demonstrates that Defendants Epting Distributors, Inc., Padilla and Blevins negligently failed to supervise Ms. Griffin and allowed the Plaintiff to be attacked on the job. <u>This was no accident</u>." (ECF No. 16, pg. 7). In other words, Plaintiff contends the SCWCA's exclusivity provision is inapplicable

because Defendant Epting's negligent supervision was intentional. The Magistrate Judge addresses Plaintiff's argument in the Report as follows:

> Without citation to case law, Plaintiff first argues that workers' compensation claims are specific to accidents not intentional acts of the agents and, thus, the exclusivity provision does not apply in this case. However, Plaintiff's claim against the Corporate Defendants for negligent supervision is not an intentional tort and, thus, this argument is without merit.

(ECF No. 14, pg. 13). In response, Plaintiff contends that her "negligent supervision claim is clear and evident and does not require case law." (ECF No. 16, pg. 7). Plaintiff's objection fails to offer any specific reference to the Report which would allow the undersigned to focus on any issue, either factual or legal, with which Plaintiff feels has been reached in error. Therefore, the Court finds Plaintiff's objection to be non-specific and finds no error in the Report's conclusion as it relates to Plaintiff's negligent supervision claim.

### 3. Breach of Contract

The Magistrate Judge recommends dismissing Plaintiff's breach of contract claim because Plaintiff failed to provide sufficient factual allegations that plausibly indicate the parties entered an employment contract beyond the at-will relationship. (ECF No. 14, pg. 17).

In South Carolina, a Plaintiff alleging a breach of contract must show the existence of "[a] contract, its breach, and the damages caused by such a breach." *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 494 (4th Cir. 2007). In the employment context, "there is a presumption . . . that employees are at-will." *Visco v. Aiken Cnty, S.C.*, 974 F.Supp.2d 908, 922 (D.S.C. 2013). Generally, at-will employment "creates

no enforceable rights in favor of the employee other than the right to collect wages accrued for work performed." *Anthony v. Atl. Grp., Inc.*, 909 F. Supp. 2d 455, 482 (D.S.C. 2012). Therefore, "the termination of employment at will does not normally give rise to a cause of action for breach of contract." *White v. Roche Biomedical Laboratories, Inc.*, 807 F.Supp. 1212, 1215 (D.S.C. 1992) (citing *Epps v. Clarendon Cnty.*, 304 S.C. 424, 405 S.E.2d 386, 387 (1991).

"However, when an employee's at-will status has been altered by the terms of an employee handbook, an employee, when fired may bring a cause of action for wrongful discharge based on a breach of contract." *Eady v. Veolia Transp. Services, Inc.*, 609 F.Supp.2d 540, 560 (D.S.C. 2009). "To alter an employee's at-will status under South Carolina law, a contract, policy, procedure or representation must limit either the duration of the employment or the employer's right to terminate the employee." *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 WL 5587854, *6 (D.S.C. Oct. 10, 2013). Accordingly, to survive a motion to dismiss pursuant to 12(b)(6), the plaintiff must "set forth sufficient factual allegations in [the] Complaint to state a facially plausible claim that the Parties entered into a contract with terms of employment that limited the duration of the relationship or the right of termination or both." *Id.*

Here, the parties do not appear to dispute whether Plaintiff was an at-will employee. Rather, Plaintiff argues that the following employee handbook provisions/procedures concerning workplace discrimination and harassment altered her at-will employment status: (1) Standards of Conduct; (2) Open Door/Conflict Resolution Process; (3) Training Program. (ECF No. 16, pg. 9). However, as the Magistrate Judge notes, "[a] defendant's

nondiscrimination policy 'does not constitute a promise altering the at-will employment relationship and giving rise to a breach-of-contract claim.'" *Ludwick v. Urb. Nirvana, LLC*, C/A No. 2:23-03372-BHH-MHC, 2023 WL 9065095, at *5 (D.S.C. Dec. 12, 2023) (collecting cases and citing *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560 (D.S.C. 2009)), report and recommendation adopted, C/A No. 2:23-3372-BHH, 2024 WL 38739 (D.S.C. Jan. 3, 2024); *Conner v. Nucor Corp.*, C/A No. 2:14-4145, 2015 WL 5785510, at *10 (D.S.C. Sept. 30, 2015) (collecting cases and noting "numerous courts have found similar [general policies against harassment and retaliation] to be insufficient to form a 'contract' of employment").

Plaintiff objects, averring she pled a plausible breach of contract claim because Epting's handbook provides "express assurances" of a standard of conduct that prohibits harassment and discrimination. Further, according to Plaintiff, her claim should survive the pleading stage because the Complaint identifies specific promises of a conflict resolution process and training program addressing allegations of harassment and discrimination. (ECF No. 16, pg. 9).

The Court is unpersuaded by Plaintiff's argument. As an initial matter, although courts have consistently found that anti-discrimination/harassment policies do not alter the at-will employee relationship, Plaintiff fails to explain why Epting's policy is exempt from the general rule. To the extent Plaintiff contends Epting's policy is unique because of Epting's alleged promise to conduct conflict resolution and training, the undersigned disagrees. Plaintiff does not allege that the conflict resolution and training procedures in any way limited the duration of her employment or the right of termination. Moreover,

Plaintiff does not allege that Epting inhibited her from collecting wages during her at-will employment. Therefore, without more, the Court finds the Report accurately concluded that Plaintiff's factual allegations are insufficient to state a plausible claim for breach of contract, and Plaintiff's objection is overruled.[3]

    4. <u>Civil Conspiracy Claim</u>

The Magistrate Judge recommends dismissing Plaintiff's civil conspiracy claim because the Complaint does not allege acts that evince a conspiracy that are distinct from the facts supporting Plaintiff's additional claims. Under South Carolina law, "[a] civil conspiracy . . . consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 382 (S.C. 1986) (citations omitted). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. 2009); *see also Land v. Barlow*, C/A No. 2:21-1883-RMG, 2021 WL 5997984, at *5 (D.S.C. Dec. 20, 2021) (noting that while the South Carolina Supreme Court abolished the requirement that a plaintiff plead "special damages" the court "preserved the requirement that a Plaintiff allege 'facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint' to state a

---

[3] Plaintiff also objects to the Report's recommendation to dismiss her claim for breach of contract accompanied by a fraudulent act. (ECF No. 16, pg. 10). As explained above, Plaintiff failed to plead facts sufficient to support a breach of contract claim. Therefore, Plaintiff has likewise failed to state a claim breach of contract accompanied by a fraudulent act. *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202 (4th Cir. 1988) (stating the plaintiff must prove a breach of contract to recover on a breach of contract accompanied by a fraudulent act claim).

claim.") (citing *Jinks v. Sea Pines Resort*, LLC, C/A No. 9:21-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021); *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021)).

Plaintiff objects to the Report, stating, "At no point in Plaintiff's previous Causes of Action did she plead facts concerning Padilla and Blevins' plan/scheme to conspire against Plaintiff to force her untimely termination." (ECF No. 16, pg. 11). After a thorough review of the Complaint, the undersigned disagrees. Plaintiff's cause of action for civil conspiracy incorporates prior allegations of the Complaint and states:

> 96. Defendant Blevins enlisted the assistance of Defendant Padilla to manufacture an ongoing scheme over several months, for the purpose of creating a pretextual justification for terminating Plaintiffs employment with Defendant Epting.
>
> 97. Defendant Blevins' assistance furthered the conspiracy by using his authority to assign projects to Plaintiff for which he knew, or reasonably should have known, she had not been trained to complete; the repeated failure of which would provide Defendant Epting justifiable grounds for Plaintiff's termination.
>
> 98. Plaintiff was targeted by deliberate design of Defendant Epting's agents, Defendants Padilla and Blevins, in a conspiracy to ensure the termination of Plaintiff's employment and deprivation of her contractual rights to due process with willful disregard for same.

(ECF No. 1-1, ¶¶ 96–98). Despite Plaintiff's contention, the allegation that Blevins and Padilla conspired to prompt her resignation/termination by assigning challenging or unattainable tasks serves as the basis for at least two other claims.

For example, Plaintiff presents nearly identical facts in support of her breach of contract accompanied by a fraudulent act claim:

> Defendant Epting, through its agents, intentionally and maliciously placed Plaintiff in the position of being subject to racial harassment, disparate treatment, and a hostile work environment by permitting its agents, specifically Defendant Padilla and Defendant Blevins, to initiate and further a pretextual plan with the goal of either forcing Plaintiffs resignation, or fraudulently providing Defendant Epting with a justifiable basis for her termination.

(ECF No. 1-1, ¶ 88). Similarly, in support of her race discrimination claim, Plaintiff alleges that, "Defendant Epting allowed its agents, Defendant Padilla and Defendant Blevins, to racially harass and discriminate against Plaintiff to the exclusion of her similarly situated Caucasian colleagues, who were not subject to the frequent, unmerited ethics calls, daily harassment, and discrimination that Plaintiff endured." (ECF No. 1-1, ¶ 61(b)). Although Plaintiff's disparate treatment and civil conspiracy allegations are not identical, they are based on substantially the same underlying facts. After Epting fired Griffin, Plaintiff argues Padilla and Blevins mistreated Plaintiff in a manner similar to Griffin, alleging that:

> 41. Defendant Padilla and Defendant Blevins began assigning Plaintiff new tasks that she had not previously been trained on, and for which she was unfamiliar.
>
> 42. When Plaintiff went to Defendant Padilla for questions or instruction on how to proceed, Defendant Padilla was visibly annoyed, was rude in her response to Plaintiff, and often provided little to no guidance or instruction.
>
> 43. It is important to note that these new tasks were in addition to Plaintiffs primary duties; for which no additional compensation was paid or offered.
>
> 44. When Plaintiff unavoidably began falling behind in her work, due to the amount of time required for the additional tasks in which she had not been properly trained, Plaintiff was verbally scolded.
>
> 45. Defendant Padilla began overly scrutinizing Plaintiffs work, and her attendance.

> 46. Defendant Padilla and Defendant Blevins intentionally made Plaintiffs work life difficult by creating an environment designed for her failure, with the intent of either encouraging her resignation, or justifying her termination.
>
> 47. Upon information and belief, none of Plaintiffs similarly situated Caucasian coworkers received the same scrutiny, treatment, or discipline.

(ECF No. 1-1, ¶¶ 40–47). The allegations in paragraph 46 form the basis of Plaintiff's civil conspiracy claim. In the subsequent paragraph, Plaintiff asserts her Caucasian coworkers were not treated in a similar manner, linking Padilla and Blevin's alleged conduct to the disparate treatment claim. Accordingly, Plaintiff has not presented any allegations supporting her civil conspiracy claim that are distinct from those underlying her other claims. Therefore, the Court adopts the Report's recommendation to dismiss Plaintiff's civil conspiracy claim, and Plaintiff's objection is overruled.

## IV.   CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. Accordingly, the Court adopts the Report in all regards and dismisses Plaintiff's hostile work environment, negligent supervision, breach of contract, breach of contract accompanied by a fraudulent act, and civil conspiracy claims with prejudice. This case shall be referred to the Magistrate Judge for further proceedings as it relates to Plaintiff's remaining disparate treatment claim.[4]

[Signature Block on Next Page]

---

[4] Plaintiff asserts her disparate treatment claim solely against Epting. Therefore, the Court dismisses Padilla and Blevins as parties to this action.

IT IS SO ORDERED

December 30, 2024
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge